**UNITED STATES of America, Plaintiff**

v.

**Kirk C. REIVICH, Defendant.**

**No. 85–00018–01–CR–W–5.**

United States District Court,
W.D. Missouri, W.D.

April 30, 1985.

Robert C. Larsen, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Bruce C. Houdek, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Defendant has moved to suppress all items seized during the execution of a search warrant at his residence and a search of his automobile on August 31, 1984. Pursuant to that motion, an evidentiary hearing was held before Chief United States Magistrate Calvin K. Hamilton. In light of the evidence adduced at that hearing, and after review of the challenged

affidavit and warrant, the Court is compelled to grant defendant's motion to suppress.

## FACTS

Shortly after selling an eighth of an ounce of cocaine to an informant, Creg Burns and Thomas Linsin were arrested by two Johnson County policemen. Lt. Vince Werkowitch followed the pair, stopped them and ultimately arrested them with the assistance of Det. Joe Sweeten, also of the Johnson County Police Department. The two men were separated and detained in the parking lot. Both were read their *Miranda* rights.

Lt. Werkowitch admits quickly telling Linsin that he had an opportunity to better his situation; that he was currently charged with possession of cocaine, which is a Class C felony in Kansas. Werkowitch explained to Linsin that in order to better his situation, he needed to "tell us where he got the cocaine from." Werkowitch then contacted the Assistant District Attorney and inquired as to what deal he could make Linsin. It was agreed that if Linsin cooperated that night, he would avoid going to jail, and would later be charged with conspiracy to sell cocaine, a Class E felony. Werkowitch testified that Det. Sweeten was present at, and participated in, these discussions in the parking lot and later at the police station. Linsin's part of the bargain, Werkowitch continued, was to reveal his source and assist in the investigation of that person. Linsin had yet to reveal his source.

Linsin insists that Werkowitch maintained he "could pretty much guarantee probation" in return for the information. Although Werkowitch denies this, he concedes explaining to Linsin that a Class E felony raised a presumption of probation. Linsin testified that the officers told him that "they could unarrest me just as easily as they arrested me." Linsin was led to believe Burns was also providing information. Linsin alleges the officers put him on "a little guilt trip" by describing his family background and explaining to him if he wanted to get off he would have to provide information "now or never." Linsin further maintains that he merely confirmed the information the officers sought from him—the officers asserted that he had gotten the cocaine from Reivich and he (Linsin) merely agreed. In any event, Linsin provided Reivich's phone number (after calling home to obtain it), yet could not recite Reivich's address with any specificity beyond 59th & Troost.

Burns was not offered the Class E felony deal, however, claims to have been told he too could "better his situation" by helping the officers out. Burns provided neither Reivich's phone number nor a specific address, however, he did identify Reivich as his source after assurances from a third officer that it would be in his best interest to tell them about the cocaine. No written statements were obtained from the two suspects. Neither these men, nor the unidentified informant that led to their arrest had previously been used as informants.

Werkowitch passed his information along to Det. Sweeten who contacted Officer Donna L. Rollo of the Kansas City Police Vice Department. Sweeten and Rollo had never met, and no written reports or statements were exchanged. Sweeten relayed the information by phone to Rollo who prepared the affidavit. Rollo had no personal knowledge of any part of the information, and it appears much of the information Sweeten proffered he had obtained from Werkowitch. Although Rollo's supervisor reviewed the affidavit, advice was neither sought nor obtained from the Jackson County Prosecutor's office. Sweeten read over the affidavit and actually went with Rollo to Associate Circuit Judge Baker's chambers in order to obtain the warrant. Sweeten did not sign the affidavit, however. Judge Baker took no testimony nor requested additional information prior to issuing the warrant.

Pertinent information in the affidavit, with respect to probable cause is:

1. On 8–30–84 a confidential informant purchased ⅛ oz. of cocaine from Creg Burns.

2. Mr. Burns and Thomas Linsin were surveilled by Johnson County Detectives and followed from 7801 Grant Lane to the area of 59th & Troost where the Detectives lost sight of the pair.

3. After locating and arresting the pair in Overland Park, Kansas, Det. Sweeten debriefed Linsin, who identified the source of the cocaine as Kirk Reivich who resides in the area of 59th & Troost, Kansas City, Jackson County, Mo., tel. no: 816–333–3789.

4. Linsin stated that while at Reivich's residence he was told by Reivich that "there's plenty of coke left."

5. Linsin stated that he has been purchasing cocaine from Mr. Reivich for approximately 3 years and that Mr. Reivich is never out of cocaine. Linsin stated that he knows that Reivich has gone to Florida in the past for cocaine. Linsin stated that on one occasion Reivich had a pound of cocaine and that this occurred within the last three months. Linsin stated that Reivich had moved to the house at 59th & Troost three days ago.

6. Burns was interviewed by Werkowitch at the same time. Burns stated that he received the ounce of cocaine from Reivich who lives just west of 59th & Troost, Kansas City, phone number 816–333–3789.

7. Burns claims to have been told by Reivich "I have more coke left." Burns stated that two months ago he and Reivich went to Florida where they purchased 1 (one) kilo of cocaine which was transported back to the Kansas City area. Burns was confident Reivich was obtaining a further quantity of cocaine during the late morning hours of 8–31–84.

8. Det. Sweeten stated that he verified the telephone number to be listed to a Mark Bland at 5912 Harrison, Kansas City. On 8–31–84 Sweeten drove by the 5912 Harrison address and observed a 1979 tan/bronze Cutlass registered to Kirk Reivich parked in the driveway.

The affidavit was signed by Officer Donna L. Rollo.

## OPINION

■ The Fourth Amendment to the Constitution of the United States guarantees freedom from unreasonable search and seizure, and provides that no warrant shall issue except upon probable cause. One of the primary values of the warrant process is that it permits *informed* and deliberate determinations of probable cause to be made by a neutral and detached magistrate. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In assessing the sufficiency of information and/or affidavits offered to establish probable cause, a "two-prong" test was designed to establish the reliability of the information and the credibility of the source. *See, e.g., Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ Prior to the development of the two-prong test, the United States Supreme Court had maintained that the probable cause standard was a practical, non-technical conception. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Embracing a return to traditional motions of probable cause determination, the United States Supreme Court has recently advanced a "totality of the circumstances" analysis for probable cause. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). This standard simply requires the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.,* 103 S.Ct. at 2332.

The *Gates* decision arises out of the fact that the determination of probable cause does not lend itself to a prescribed set of rules, like those that had developed after *Spinelli* and *Aguilar.* The "totality of the circumstances" is a flexible, common sense standard that better serves the purposes of

the Fourth Amendment's probable cause requirement.

■ This Court does not review de novo the previous determination of probable cause now challenged by way of defendant's motion. Great deference is to be afforded the magistrate's determination of probable cause. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984); *Spinelli v. United States, supra,* 89 S.Ct. at 590. However, in abandoning the two-prong test for probable cause, in no way did the Supreme Court sanction the abdication of the magistrate's duty. Deference to the magistrate is not boundless, and this Court still conscientiously reviews the sufficiency of an affidavit upon which a warrant issues. This court will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. *United States v. Leon, supra,* 104 S.Ct. at 3417; *Illinois v. Gates, supra,* 103 S.Ct. at 2332. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. *Id.*

■ Review of the probable cause determination is not yet an exercise in "20–20" hindsight. Regardless of the result obtained by way of the challenged warrant and/or search, the "totality of the circumstances" set forth in the affidavit presented to the magistrate must sufficiently establish probable cause for the issuance of the warrant. Nothing in the *Gates* or *Leon* decisions imply that the fact that the search is ultimately successful remedies or cures an otherwise deficient affidavit. Accordingly, in examining the affidavit presented to Associate Jackson County Circuit Judge Baker, this Court finds that insufficient information was contained therein upon which to determine probable cause existed to search 5912 Harrison for cocaine.

While retreating from the use of the two-step *Spinelli* test, the Supreme Court in *Gates* reiterated the importance of the reliability of the source of information in determining probable cause. *See Illinois v. Gates, supra,* 103 S.Ct. at 2332. The affidavit presented to Judge Baker is almost devoid of any assurances that Linsin and Burns are reliable. Neither volunteered the information—it was obtained from them at the time of their arrest, in a Quik-Trip parking lot, as part of a "deal" to "help themselves out" and "better their situations." Neither had been used previously as a source.

In some cases reliability might be inferred from statements against penal interest, however, it can hardly be gainsaid that the statements given were against either's penal interest. The pair had been arrested and admitted possession of ⅛ oz. cocaine. Revealing Reivich's name, address, and/or phone number was not against their penal interest. Arguably, admitting their past participation in cocaine sales approaches such a statement, but again does nothing more than implicate a third party, by bald accusation, in the crime they had just been arrested for. Nothing contained in the affidavit establishes the reliability of Burns and Linsin, nor could it be inferred from their selfserving finger-pointing directed at this defendant.

The United States Supreme Court has consistently recognized the value of corroboration of details of an informant's tip by independent police work. *See, e.g. Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). Many of the concerns regarding the reliability of hearsay information can be alleviated or even eliminated so long as the information can be corroborated by other matters within the affiant's knowledge. Corroboration through other sources of information reduces the chance of a reckless or prevaricating tale, thus providing a substantial basis for crediting hearsay and establishing probable cause. *Illinois v. Gates, supra,* 103 S.Ct. at 2335.

Given the absence of information relating to Burns and Linsin's reliability, the importance of corroboration becomes manifest. Facts obtained through corroboration

that suggest the truth and reliability of the pair would have provided a substantial basis for establishing probable cause; such corroboration, however, is lacking here.

Page 3 of the affidavit reveals Detective Sweeten's efforts at corroborating Burns and Linsin's accusations. Sweeten corroborated four rather innocuous facts—(1) the phone number given as Reivich's was listed to a Mark Bland, at the 5900 block of Harrison. (2) [Although not stated in the affidavit,] Harrison is west of Troost. (3) After driving by that address, Sweeten observed an automobile in the driveway that was registered to the defendant. (4) Burns and Linsin had been in the vicinity of 59th & Troost earlier in the day. This is the extent of Sweeten's corroboration. These [corroborated] facts do not establish a fair probability that defendant was indeed the source of Burns' and Linsin's cocaine. The corroborated facts did not involve predictions of future events. *Cf. Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ("classic case on the value of corroboration"). The facts corroborated did not encompass a range of details regarding the future actions of third parties not easily predicted. *Cf. Illinois v. Gates, supra*, 103 S.Ct. at 2335. Finally, the corroborated facts were innocuous, easily obtained bits of information that were not corroborative of the statements regarding defendant "never being out" of cocaine or "having more coke left," the cornerstone of the probable cause determination. *Cf. United States v. Robinson*, 756 F.2d 56, 60 (8th Cir.1985). Corroboration's value lies in the fact that if an informant is right about some things he is more likely to be right about other facts. *See Spinelli, supra*, 89 S.Ct. at 594. Sweeten's corroboration, however, doesn't even establish the correctness of the given facts—the phone number was listed to [previously unmentioned] Mark Bland, and Reivich's car was merely in the driveway of a residence west of 59th & Troost. Neither informant ever gave 5912 Harrison as defendant's address.

Although hindsight ameliorates the potential or actual coercive effect, the omission of the facts regarding the offers and inducements made Burns and Linsin in return for the information cannot be minimized. Omitting these facts suppressed potential doubts as to the informants' credibility and thereby deprived Judge Baker of the totality of the circumstances necessary to a neutral, detached, and even-handed determination of probable cause. Disclosure of the inducements might have severely undermined the value of the informants' statements. At the least, it deprived Judge Baker of the information essential to his assessment of the informants' credibility, whose information was a lynch-pin of the issuance of the warrant. Without this information, Judge Baker was unable to fully evaluate, on a proper understanding the information provided him in the affidavit. *Accord United States v. Rule*, 594 F.Supp. 1223, 1240 (D.Me.1984).

Given the totality of the circumstances described in this affidavit, the Court concludes that there was not a substantial basis for concluding that probable cause existed to search for cocaine in the defendant's car and the dwelling at 5912 Harrison.

–B–

█ The Court's inquiry does not end here, however. Despite the invalidity of the search warrant, suppression may not yet be appropriate. The Exclusionary Rule is often described as a judicially-created, but necessary, corollary of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 1689, 1691–92, 6 L.Ed.2d 1081 (1960). However, the Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands, and the origin and purpose of the Amendment makes it clear that the use of the fruits of a previous, unlawful, search or seizure works no new Fourth Amendment wrong. *United States v. Leon, supra*, 104 S.Ct. at 3412; *United States v. Calandra*, 94 S.Ct. 613, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974). Close attention to the well-recognized remedial objectives of the Exclusionary Rule has been relaxed

somewhat by recent Supreme Court decisions in the Fourth Amendment area.

Admittedly, if exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, it must alter the behavior of the individual law enforcement officers or department policies. *See United States v. Leon, supra,* 104 S.Ct. at 3419. Accordingly, the United States Supreme Court has declared that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and then only in those unusual cases in which exclusion will further the purposes of exclusionary rules. *Id.* at 3419. The marginal benefit produced by suppressing evidence obtained in *objectively reasonable* reliance on a subsequently invalidated search warrant does not justify the substantial costs of exclusion. *See United States v. Leon, supra,* 104 S.Ct. at 3421. However, this goodfaith exception for searches conducted pursuant to warrants does not signal judicial unwillingness to strictly enforce the requirements of the Fourth Amendment. *Id.* at 3422. The *Leon* decision avoids penalizing the officer (through suppression) for errors, other than his own, so long as his actions are *objectively reasonable.* A search pursuant to a warrant issued by a magistrate normally suffices to establish that the law enforcement officer has acted in good faith in conducting the search, however, the officer's reliance on the probable cause determination and technical sufficiency of the warrant must be *objectively reasonable. Cf. Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2737–2739, 73 L.Ed.2d 396 (1982). Suppression remains appropriate in circumstances where the officer(s) involved have no reasonable grounds for believing that the warrant was properly issued. *United States v. Leon, supra,* 104 S.Ct. at 3421. Moreover, it is necessary to consider the objective reasonableness, not only of the officers who eventually execute a warrant, but also of the officers who originally obtained it, or who provided information material to the probable cause determination. *Id.* at 3421 n. 24.

Thus, just as the Court's deference to a magistrate's probable cause determination can be vitiated by inquiry into the knowing or reckless falsity of the affidavit on which that determination was based, *see Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), so too will suppression remain appropriate where the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth. *United States v. Leon, supra,* 104 S.Ct. at 3421.

This analysis/reasoning applies equally to cases involving material omissions of facts in the affidavit. *See United States v. Dennis,* 625 F.2d 782 (8th Cir.1980). By failing to include the information regarding inducements offered Burns and Linsin for their information, Sweeten displayed, at the very least, reckless disregard for the truth of said affidavit. Sweeten made a conscious decision as to what was relevant to Judge Baker's probable cause determination. Judge Baker, not Detective Sweeten, must judge the totality of the circumstances and make an informed, neutral determination as to the existence of probable cause. Objective reasonableness requires the presentation of facts known to an applicant for a warrant which will allow the magistrate to make an informed decision as to the existence of probable cause. By omitting the information regarding the inducements and "deal" offered to the informants, an officer objectively acts with reckless disregard for the truthfulness of an affidavit, in a manner destructive of the warrant process. *Cf. United States v. Rule,* 594 F.Supp. 1223, 1247 n. 1. Neither does Sweeten's recitation of the information to Officer Rollo, and her signature on the affidavit insulate the warrant and fruits of the search from suppression. Reliance on colleagues ignorant of the circumstances under which the warrant was obtained to conduct the search cannot cure Sweeten's lack of objective reasonableness. *See, e.g. United States v. Leon supra,* 104

S.Ct. at 3421 n. 24. Interestingly, Detective Sweeten read over the affidavit and accompanied Officer Rollo to the courthouse to obtain the warrant, yet neither signed nor offered the affidavit.

Suppression in this case does indeed further the purposes of the Exclusionary Rule, consistent with the *Leon* decision. Suppression here does not penalize the officers for errors largely attributed to the issuing judge.[1] Sweeten's deliberate omission of information which bears greatly on the [otherwise lacking] evidence of the informants' credibility usurped the function of Judge Baker. Assuming, arguendo, that the affidavit otherwise contained sufficient indicia of the informants' credibility or reliability, this information no doubt detracts therefrom. Withholding the information is an unwarranted arrogation of the magistrate's function. *Cf. United States v. Rule, supra,* 594 F.Supp. at 1247.

### CONCLUSION

The Court concludes the affidavit failed to establish a substantial basis for determining the existence of probable cause. Moreover, as the officer(s) involved have not displayed objective reasonableness, application of the sanction of exclusion is appropriate.

Accordingly, it is hereby

ORDERED that defendant's motion to suppress is sustained.

---

**1.** While the Court has previously determined that there was an insufficient basis upon which to determine the existence of probable cause and ultimately issue the warrant, the failure therein was due in large part to Det. Sweeten's omissions. Moreover, once determining, for any reason, that the warrant should not have issued, the officer's lack of objective reasonableness prevents good-faith reliance on the warrant.