7 F.3d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Wayne FINCH, Defendant-Appellant.
 No. 93-1783.
 United States Court of Appeals, Sixth Circuit.
 Oct. 13, 1993.
 
 Before: KENNEDY and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Michael Wayne Finch was convicted of possession of marijuana, a violation of 21 U.S.C. § 844(a). Defendant challenges the District Court's denial of his pre-trial motion to suppress evidence obtained pursuant to a warrant issued to search his home in Harbor Beach, Michigan. Defendant based this motion on two grounds: (1) the information contained in the warrant affidavit was not sufficiently reliable to support a finding of probable cause; and (2) information material to the probable cause determination was intentionally withheld for the purpose of misleading the magistrate. For the reasons that follow, we affirm the judgment of the District Court.
 
 I.
 
 2
 A search warrant for defendant's Harbor Beach home was obtained from a federal magistrate judge on May 2, 1990. On May 3rd, agents executed the warrant and seized a quantity of marijuana, approximately forty firearms and a quantity of explosive materials from defendant's house. The explosive materials were later connected to a Thomas O'Neil, who was subsequently prosecuted for a variety of offenses in March 1991. Defendant testified as a defense witness at O'Neil's trial. Portions of defendant's testimony at O'Neil's trial were used as evidence against defendant at his trial in December 1992.
 
 
 3
 Defendant was charged in a two-count indictment with being an unlawful user of marijuana in possession of firearms (Count I) and with possession of marijuana (Count II). After a jury trial, defendant was found guilty of Count II and a mistrial was declared as to Count I due to the failure of the jury to reach a unanimous verdict as to that charge. Defendant received a six-month sentence for his conviction on Count II.[1] Prior to defendant's trial, he moved to suppress the evidence found at his house and his testimony at O'Neil's trial. This timely appeal involves only defendant's conviction and resulting sentence for possession of marijuana (Count II).
 
 II.
 A. Probable Cause
 
 4
 In his first argument, defendant claims that the District Court erred in denying his motion to suppress because the warrant affidavit contained insufficient indicia of the informant's reliability and thus, did not provide probable cause to issue the search warrant. A magistrate judge determines whether probable cause to support a warrant exists by examining the "totality-of-the-circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause to issue a search warrant exists where there is "a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 233-34. "[T]he traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. Jones v. United States, 362 U.S. 257, 271 (1960)." Id. at 236. When considering a District Court's disposition of a motion to suppress evidence, we review the court's findings of fact for clear error and its legal conclusions as to the existence of probable cause de novo. United States v. Leake, No. 92-6070, slip op. at 6-7 (6th Cir. July 12, 1993).
 
 
 5
 In Gates, the Supreme Court discarded the rigid "two-pronged" approach to probable cause determinations devised in Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969), which had required that informant-based warrant affidavits contain information establishing: (1) the informant's veracity and reliability; and (2) the basis of the informant's knowledge. In its place, the Court adopted the totality-of-circumstances approach, which views probable cause as a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. So while an informant's veracity and basis of knowledge are important considerations in assessing the overall reliability of the information, the probable cause calculus does not involve an inflexible dual inquiry into the independent existence of each factor. Indeed, "a deficiency in one may be compensated for ... by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. The Court then gave the following example, pertinent to the present case:
 
 
 6
 [I]f an unquestionably honest citizen comes forward with a report of criminal activity--which if fabricated would subject him to criminal liability--we have found that rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.
 
 
 7
 Id. at 233-34 (emphasis added).
 
 
 8
 Here, the warrant affidavit contained a highly detailed description of defendant's alleged illegal activities, which was based upon the informant's personal observations. The twelve-page warrant affidavit was prepared by Deputy Sheriff Dennis Steger of the Saginaw County Sheriff's Department. The majority of the affidavit contained information Steger had received from the informant, a building contractor named Larry Biniecki. Biniecki worked for defendant at defendant's home in Harbor Beach, Michigan between June and December of 1989, and then again in the Spring of 1990. It was during this time period that Biniecki obtained the following information that he related to Steger:
 
 
 9
 First, defendant used large amounts of cash in many of his business transactions. Specifically, defendant paid Binecki an initial downpayment of $4,000 in four bundles of $1,000 each; this cash was stored in the trunk of his car, wrapped in a garbage bag, underneath the spare tire. Later, defendant made additional cash payments to Binecki that in total amounted to approximately $97,000. Second, on several occasions Binecki observed defendant dealing in marijuana at his home. Defendant explained his drug trafficking business, which involved the receipt and distribution of large quantities of marijuana, to Binecki. Further, Binecki revealed that on two occasions, defendant paid him for his labor in quantities of marijuana. Third, Binecki described many cars and a $125,000 boat that defendant owned. Deputy Sheriff Steger corroborated this aspect of Binecki's tip; according to Michigan Secretary of State office records, eight automobiles were registered to either Michael or Maxine Finch during the first third of 1990, none of which showed any liens from financing institutions. Steger also viewed these vehicles firsthand at defendant's home.
 
 
 10
 The affidavit also included information that an unidentified source informed Steger that a John Anderson, who sold defendant the Harbor Beach house, had told the source that defendant had paid a $60,000 down payment for the house in cash, which defendant retrieved from a garbage bag stored in the trunk of his Corvette. This information corroborated the information Binecki provided about defendant dealing in large amounts of cash and the manner in which he stored cash.
 
 
 11
 In light of the independent corroboration of details provided by Binecki; the notable fact that certain information about defendant's involvement in marijuana trafficking was against Binecki's penal interest; and the fact that he obtained much of the very detailed information from personal observation of defendant, we believe that Binecki was sufficiently trustworthy that the magistrate judge could rely on the information he provided to make the probable cause determination. Based upon the information in the affidavit, there is no question that a fair probability existed that there was contraband in defendant's home.
 
 
 12
 B. Failure to Include Information About Immunity Agreement
 
 
 13
 Next, defendant claims that the warrant affidavit should have included information about an immunity agreement between defendant and federal authorities in Sacramento, California. Before arriving in Harbor Beach, Michigan in the summer of 1989, defendant resided in Sacramento, California. Defendant instigated discussions with the Sacramento office of the federal Drug Enforcement Agency ("DEA") concerning drug trafficking activities in California, some of which involved defendant. In exchange for this information, the federal agents in California agreed to provide defendant with immunity from prosecution. Neither party has provided this Court with a copy of the immunity agreement. There has been an ongoing dispute over the nature of this agreement. The government contends that the agreement was a use immunity agreement. Defendant contends that he was given a broader type of immunity that protected him from prosecution or asset forfeiture for any criminal activities he participated in through October 9th or 10th of 1989.
 
 
 14
 In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court decided that, under certain circumstances, a criminal defendant is entitled to challenge the veracity of a warrant affidavit after the warrant is executed under the exclusionary rule of the Fourth Amendment. Specifically, the Court held:
 
 
 15
 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
 
 
 16
 Id. at 155-56. No hearing under Franks is required, however, if when the alleged falsity is disregarded, "there remains sufficient content in the warrant affidavit to support a finding of probable cause...." Id. at 172.
 
 
 17
 We and other Circuits have applied Franks in cases where it is claimed the affiant intentionally omitted information material to the probable cause determination. United States v. Martin, 920 F.2d 393, 398 (6th Cir.1990); United States v. Colkley, 899 F.2d 297 (4th Cir.1990). In cases of alleged omission, "to serve as the basis for a hearing under Franks, [the omission] must be such that its inclusion in the affidavit would defeat probable cause for arrest." Colkley, 899 F.2d at 301 (citing United States v. Reivich, 793 F.2d 957, 961 (8th Cir.1986)). "Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing." Id. (citing Reivich, 793 F.2d at 962).
 
 
 18
 In the present case, the District Court found that defendant was not entitled to a Franks hearing because the affiant did not intentionally mislead the magistrate judge about the immunity agreement. We do not review this finding because even if the omission was intentional, defendant would still not be entitled to a Franks hearing because the existence of the immunity agreement is irrelevant to the probable cause determination. While the agreement may be relevant to the validity of the prosecution of defendant for actions occurring during the time period covered by the agreement, it has no bearing on whether the affidavit provided probable cause to support a search warrant. As discussed above, there was abundant information independent of the immunity agreement establishing probable cause that there was contraband in defendant's home. Even if information about the immunity agreement had been included in the affidavit, it would not have defeated a finding of probable cause because the information establishing probable cause was unrelated to defendant's immunized testimony.
 
 C. Defendant's Testimony at O'Neil Trial
 
 19
 Defendant also argues that his testimony at Thomas O'Neil's trial should be suppressed as fruit of the poisonous tree. As we have determined the warrant was supported by probable cause, defendant's last argument is without merit.
 
 III.
 
 20
 The judgment of the District Court denying defendant's motion to suppress is AFFIRMED.
 
 
 
 [1]
 District Judge Robert Cleland conducted the first trial but subsequently recused himself from the retrial of Count I; that matter was transferred to District Judge Stewart Newblatt. The parties then stipulated to have Count II transferred to Judge Newblatt for purposes of sentencing