BEAM, Circuit Judge,
dissenting.
I respectfully suggest that the court applies both inapposite precedent and an inapplicable standard of proof. This, in turn, leads to a faulty legal conclusion. Accordingly, I dissent.
This 42 U.S.C. § 1983 case is before the court after a district court order denying Namanny’s motion for summary judgment. As the court notes, we analyze Namanny’s claim of qualified immunity using a three-part inquiry: (1) whether Hunter has asserted a violation of a constitutional right; (2) if so, whether the right was clearly established at the time of the constitution *833 al violation; and (3) whether, viewing the record most favorably to Hunter, there is no genuine issue of material fact as to whether a reasonable police officer would have known that the acts in question violated Hunter’s constitutional rights. See Yowell v. Combs, 89 F.3d 542, 544 (8th Cir.1996). Ours is a de novo review in which we apply the same standards as those that should have been applied by the district court. See Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir.1996).
Under the first inquiry, the court concludes that if the modified affidavit was insufficient to establish probable cause to search, a constitutional violation sufficient to support Hunter’s section 1983 claim has been established. This is clearly incorrect.
In reaching this conclusion, the court cites only precedent involving the suppression of evidence in criminal prosecutions— not section 1983 qualified immunity cases. See ante at 829-30 (citing Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); United States v. Reivich, 793 F.2d 957 (8th Cir.1986) and United States v. Dennis, 625 F.2d 782 (8th Cir.1980) (citations omitted)). This is error.[2]
These suppression cases are of value in determining a police officer’s duties. However, the search of a residence through use of a warrant issued without probable cause does not mean that the resident has established a constitutional violation sufficient to support a section 1983 claim against the police officer who attempted to supply the probable cause necessary to obtain the warrant. Following Franks, the plaintiff, in an official immunity case, must prove (1) that an affiant, in applying for a warrant, knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a substantial falsehood, and (2) that such statements or omissions were material and necessary to the finding of probable cause. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997) (citing Franks, 438 U.S. at 171-72, 98 S.Ct. 2674). See also Myers v. Morris, 810 F.2d 1437, 1457-58 (8th Cir.1987), abrogated on other grounds, Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). A showing of inadvertence, negligence, or even gross negligence in presenting or failing to present facts to the issuing judge does not carry the day for a section 1983 plaintiff.
When such a claim is asserted and the defendant moves for summary judgment alleging qualified immunity, the plaintiff has the burden of establishing the existence of a genuine issue of material fact as to whether or not knowing, willful, and reckless conduct has occurred. See Moody v. St. Charles County, 23 F.3d 1410, 1411 (8th Cir.1994). This cannot be done through naked allegations and fanciful claims. See id. at 1412.[3] Hunter *834 “must substantiate [her] allegations with ‘sufficient probative evidence that would permit a finding in [her] favor [by a reasonable jury] on more than mere speculation, conjecture or fantasy.’ ” Id. (quoting Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir.1992)). The burden of persuasion is succinctly stated in Hervey v. Estes, 65 F.3d 784 (9th Cir.1995). “[A] plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can both establish a substantial showing of a deliberate falsehood or reckless disregard [for the actual facts] and establish that, without the dishonesty included or omitted information, the magistrate would not have issued the warrant.” Id. at 789 (emphasis added). The exact measure of proof that it takes to substantiate such acts does not seem to have been established in this circuit. It is clear, however, that it is a comparatively high threshold. This is because a “presumption” of validity accompanies the affidavit supporting a search warrant, and “[t]o overcome this presumption requires no less than a specific affirmative showing of dishonesty by the applicant.” Myers, 810 F.2d at 1458 (citing Franks, 438 U.S. at 171, 98 S.Ct. 2674). While our court, as far as I can tell, has never specifically discussed how much proof is needed to make this showing, it is clear to me that whatever the test, it exceeds the standard announced by the court in this case, see ante n. 1, and the quantum of .evidence adduced by the plaintiff.[4]
The concurrence agrees that Hunter’s “own naked allegations are not sufficiently probative,” ante at 832, but states that in a case like this we “engage[] in the necessary fiction” that Ms. Davis’s deposition testimony is credible and true. Ante at 832. I find no support for such an approach. Before allowing the case to proceed to trial, the court has a duty to determine whether Hunter has made a “substantial showing” of falsehood and recklessness. This cannot be done without an analysis of the character and quality of the facts advanced, even facts proffered by a nonparty. Under this “necessary fiction” approach, any third-party deposition or affidavit, even one that is patently incredible, as the deposition in this case, is sufficient to defeat a claim of qualified immunity.
While the court must view any inferences drawn from the facts established in a light most favorable to Hunter, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the court is free to conclude that no facts exist sufficient for a reasonable jury to return a verdict for Hunter. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is Hunter’s responsibility to address the elements of the qualified immunity defense under the burdens required by the applicable presumptions of validity and to show a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Assuming these requirements, I turn to Namanny’s warrant affidavit and the facts advanced by Hunter. Hunter and the court criticize Namanny’s failure to assert that although the complaint received by *835 the police described “heavy, short-term traffic,” no such traffic was observed on either July 2, the night of the search, or on the previous night when surveillance was conducted for four hours. Insofar as Hunter’s specific constitutional claim is concerned, this information, which is not disputed by Namanny for purposes of summary judgment, is irrelevant, immaterial and not causally related to the purported constitutional violation — the residential search. Namanny’s affidavit, as presented to the judge, with or without the omitted traffic information, was clearly sufficient to establish probable cause to search Hunter’s residence. What otherwise occurred on July 2 is the crucial question.
Hunter does not claim, or in any way attempt to show, that any part of Naman-ny’s affidavit of July 2 was affirmatively false, except whether Davis got the drugs from Hunter or from the illusive “Charles” whom Davis says she met by chance at a convenience store during a deviation in travel while she was being surveilled, followed, and stopped for an uncontested traffic violation. Indeed, there is no dispute that Davis was at Hunter’s house, that she was surveilled and followed, that she was detained for a traffic violation and that she had the drugs in her purse. The only dispute, as indicated, is that Hunter claims that Davis stopped at a convenience store and that when she was stopped for the traffic violation she told Namanny that she got the drugs from a friend. The police, of course, swear that Davis did not stop at a convenience store and that Davis told Namanny she got the drugs from Hunter.
In the face of this dispute, the court dons its fact-finder hat and credits Hunter’s version of events, disbelieves Officer Namanny, and, in doing so, peremptorily overrides the presumption of truthfulness that accompanies the affidavit. Citing Franks, the court, see ante at 829-30, demands a truthful showing and then simply proceeds to pronounce that Hunter and Davis are truthful and that Officer Naman-ny is not. This is a misplaced application of the “favorable view of the proof’ rule. In the framework of summary judgment, the court must be guided by the substantive evidentiary standards that apply to the particular case in determining whether the proffered facts should be given a favorable view. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Namanny, after all, is not seeking judgment on the pleadings.
Applying a sufficient probative evidence standard, see Myers, 810 F.2d at 1458, Hunter falls well short of establishing enough facts to allow a reasonable jury to find for her on her claim. Without passing this test, she has neither established a violation of a constitutional right nor the existence of a genuine issue of material fact.
I recognize this case is complicated by the “she says, he says” factual dispute on the source of the crack cocaine. However, given Hunter’s burden of making a specific affirmative showing that the disputed facts advanced by Namanny were knowingly, deliberately or recklessly false, I believe that Hunter’s “she says” presentation falls short.
Indeed, a review of the record, quickly reveals that Hunter’s version of Davis’s activities is palpably incredible, thus not supportive of her claim under any burden of proof one may wish to select. Davis’s story involves a chance encounter with Charles, last name unknown, who said to Davis “Well, why don’t you go ahead and take this. I know you still like to do this,” when he gratuitously gave her the crack found by the police in her purse. All this supposedly occurred while she was being trailed by the police. As to what she told the officers after the traffic stop, her deposition contained the following excerpt:
Q. Did they [the police] at any time ask you where you had purchased cocaine?
*836 A. I don’t remember. I told them— [t]hey did, but I told them I didn’t purchase it.
Q. What did you tell them?
A. I told them it was given to me. They asked if I had paid anything for it. I said, “I didn’t know it was in my purse. It wasn’t mine.” I denied it.
Q. What specifically did you tell them [the police] when you were stopped as to where you got the cocaine? Specifically what did you tell them?
A. From a friend. I said it wasn’t mine after he pulled it out. I denied it.
It seems almost inconceivable that we would send this police officer to trial for a purported constitutional violation on this measure of evidence.
Finally, the court uses this case to needlessly gloss and construe (and I think misconstrue) our holdings in Reivich and Dennis. Little, if any, of the court’s case analysis is necessary or proper for a decision in this case. There are no issues here of suppression of evidence in a criminal proceeding as were dealt with in Reivich and Dennis. There is also no basis for a holding that this court in an appeal of this kind can credit or discredit evidence and make random conclusions as to where the truth lies in an evidentiary dispute. The court’s entire discussion of what should be excised from or inserted into an affidavit in support of a search warrant is, at best, obiter dictum.
I would reverse the district court with directions to grant Namanny qualified immunity or, at least, remand for a hearing and evaluation of the single, disputed evi-dentiary issue under an appropriate burden of proof imposed upon the plaintiff.
I dissent.

. The court attempts to support its arguments with wholly inapposite language from Reivich to the effect that when “allegedly omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred.” Ante at 830 (emphasis added). This random statement from Reivich has virtually nothing to do with this case and serves only to obfuscate the real issues. First, contrary to the situation here, in Reivich, there were factual findings of deliberate omissions made by the district court not merely untested allegations by Hunter and her drug customer. Second, the issue here is not "probable cause” and a simple violation of the Fourth Amendment sufficient to grant suppression of evidence, but rather deliberate falsehood and reckless conduct by the police officers.

. The court citing Walden v. Carmack, 156 F.3d 861, 869 (8th Cir.1998), see ante at 829-30, and Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), see ante n. 1, contends that because this case is here on summary judgment, we are obligated to “examine both the evidence presented [presumably the Davis deposition] and the allegations of Hunter's complaint,” and assume they are true. This is an incorrect statement of the law. The court chides me for finding the Davis testimony "palpably incredible.” In this regard, the court again makes an inaccurate analysis of the law. This *834 case is not before the court on a Federal Rule of Civil Procedure 12(b)(6) motion but rather a Rule 56 motion and one that has to be considered under the presumption of validity established by Franks and the substantial showing requirement set forth in Moody, Carmack and Hervey v. Estes, 65 F.3d 784 (9th Cir.1995). And, the holding in Behrens, is clearly not to the contrary.

. This affirmative showing requirement is not an unusual evidentiary test in summary judgment jurisprudence. Other presumptions at work in other circumstances require a heightened standard of proof. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 1604, 143 L.Ed.2d 966 (1999) (earlier assertion of total disability for purposes of Social Security Act creates a presumption that can only be overcome with a good, sufficient, and believable explanation of why claimant is now a qualified individual with a disability under the Americans with Disabilities Act).