Randolph THOMAS, Plaintiff-Appellee,

v.

The CITY OF NEW ORLEANS, et al.,
Defendants-Appellants.

Nos. 81–3579, 81–3602
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1982.

Charles J. Willoughby, New Orleans, La., for defendants-appellants.

Mary E. Howell, Pamela J. Bayer, New Orleans, La., for plaintiff-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This is an appeal from a decision against the defendants, the City of New Orleans and various officials of the New Orleans Police Department in a civil rights case. The suit arose out of the actions of defendant officials resulting in plaintiff's dismissal from the police department.

Randolph Thomas was a police officer with the New Orleans Police Department. On June 3, 1979, Thomas and his partner, Officer Norman Caesar, twice visited the home of Gary Honore and his common-law spouse in response to reports of domestic disturbance. The first visit resulted in merely a warning from Officer Caesar. But on the second visit, Officer Caesar arrested Honore on three separate charges: unlawful language toward a police officer, criminal trespassing, and resisting arrest. Officer Thomas took issue with his partner over the arrest and the manner in which it was made. He claimed that one of these charges, unlawful language towards a police officer, was based upon a city ordinance which had been declared unconstitutional,

and police officers had been instructed not to use it. He questioned the additional charge of criminal trespassing, since Honore paid the rent and lived at the site of the arrest. Thomas also complained to Caesar that deadly force was used without justification in effecting this misdemeanor arrest. Specifically, he claimed that Caesar struck Honore twice over the head with his nightstick in violation of departmental regulations. Caesar denied all these charges.

Caesar, as both the arresting officer and the senior officer in the patrol car, prepared the standard arrest reports and presented them to Thomas to sign. Thomas, however, refused to sign the arrest reports on the grounds that the arrest was unlawful and that excessive force had been used in making the arrest. Thomas notified his superiors of the grounds for his refusal. The Police Department began an investigation into the matter. The conclusion of the investigation was a determination that Officer Thomas had refused to cooperate with the investigation, despite direct orders to do so. Thomas was suspended from the force, and on July 6, 1979, he was discharged. The Department based the discharge on Thomas' refusal to cooperate with the investigators.

Thomas then filed this suit against the City of New Orleans, the Chief of Police, and other Police Department employees claiming his discharge was unlawful under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985, 1986, and 1988. He alleged that he had been denied his First Amendment rights to free speech, his due process rights, and his right to equal protection of the laws, and that members of the Department had conspired to arrange his wrongful discharge. Thomas charged that the conspiracy was part of a "blue curtain," a code of silence within the Police Department designed to discourage policemen from testifying against one another. The City maintained that Thomas' dismissal was due to his refusal to obey orders.

The United States District Court for the Eastern District of Louisiana, after a jury trial, awarded Thomas $17,399 in actual damages for back pay and $50,000 in exemplary damages based upon a general verdict that his constitutional rights had been violated. The court also reinstated Thomas on the New Orleans police force. The defendants now appeal this judgment contesting the verdict, the award of punitive damages, the amount of Thomas' attorneys fees, and the order to reinstate Thomas on the force. We affirm the decision of the district court.

## I. Award of Compensatory Damages

We first address the assertion of appellants that the record does not support an award of compensatory damages. Appellants do not challenge the nature of the constitutional rights appellee claims were violated. Their challenge revolves around the finding of a conspiracy to violate those rights.

The charges in this case cut deeper than an allegation of discriminatory employment practices. Thomas' complaint alleged a widespread and invidious "blue curtain" within the New Orleans police force, creating a code of silence to shield those who abide by the code and punish those who violate it. Sanctions allegedly ran from giving the "silent treatment" to offenders to orchestrating their separation from the force. At trial, defendant Parsons, who was in 1979 the New Orleans Chief of Police, acknowledged that such a "blue curtain" exists on most every major police force, and admitted that in 1979 it existed to a greater extent in New Orleans than in most other cities. He denied, however, that Thomas' dismissal was the result of any conspiracy.

The jury, after hearing all the evidence and receiving proper instructions regarding the legal elements of a conspiracy, found that a conspiracy did exist. The jury answered "yes" to the following two interrogatories:

6. Did any of the defendants join in a conspiracy to violate plaintiff's rights in discharging plaintiff?

A. = Yes.

9. Do you find that the conduct of the individual defendants in discharging plaintiff was malicious, wanton, or oppressive?

A. = Yes.

█ The role of this Court is not to adjudicate the facts de novo, nor is it our task to second-guess the conclusion of the members of the jury who had the important opportunity to evaluate the demeanor of the witnesses. The appellants urge that there is substantial evidence to support judgment in their favor. This may or may not be the case, but the contention is not germane. The record shows clear and substantial evidence to support the jury's findings for appellee. The facts and inferences do not "point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). The trial judge therefore acted properly in denying the motion for directed verdict and in entering judgment consistent with the jury's verdict.[1]

█ Appellants urge that Thomas failed to prove that a conspiracy existed. We must reject this contention. The requirement is that the defendants be shown to have had an agreement to commit an illegal act which resulted in the plaintiff's injury. "This requirement must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979).

The record shows that the various defendants had participated in private meetings during which Thomas' contentions were discussed. Furthermore, the Chief of Police at the time of the incident as well as other witnesses also testified that they suspected other similar wrongdoing within the Department. Thomas, however, was the first officer in ten years to lodge a complaint against a fellow officer for depriving a civilian of civil rights or for using unnecessary force in accomplishing an arrest, according to the stipulations of the parties. If the jury believed the testimony of expert and Police Department witnesses that a "blue curtain" existed within the New Orleans Police Department, they reasonably could have concluded from the evidence showing the unjustified conduct of Caesar in the arrest and the various meetings and actions of defendants which followed that Thomas was the target of sanctions imposed by such a "blue curtain" conspiracy. Our careful reading of the entire record shows sufficient evidence from which a jury reasonably could have inferred that such a conspiracy existed.

## II. Granting of Punitive Damages

█ Appellants next claim that punitive damage awards against the individual defendants were inappropriate. Punitive damages in civil rights actions may be imposed only if the conduct that violates the plaintiff's constitutional rights is "malicious, wanton, or oppressive." Appellants claim that their conduct, at worst, involved merely mistakes or errors and not a wanton disregard or indifference toward Thomas' constitutional rights. Yet at trial, Police Department officials testified that the grievance and investigatory procedures used within the Department at that time were officially known to be ineffective in protecting the rights of the complaining officers.

█ Further, officers involved in the administrative investigation of these issues also skirted some of the internal control mechanisms that might have preserved the impartiality and objectivity of the investi-

---

**1.** The defendants apparently did not move for a judgment notwithstanding the verdict at trial, which precludes this Court from considering their request for a reversal of the district court's judgment. At most, this Court could consider only a remand for a new trial. *Cone v. West Va. Pulp and Paper Co.*, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947). *See also* *Globe Liquor Co. v. San Roman*, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1947); *Zarzauer v. United States*, 493 F.2d 447, 453–54 n.15 (5th Cir. 1974); *Yorkshire Indemnity Co. of New York v. Roosth & Genecov Production Co.*, 252 F.2d 650 (5th Cir. 1958). However, the merits of the appeal do not justify any alteration of the trial court's judgment in the instant case.

gations that led ultimately to Officer Thomas' dismissal. The normal procedure when an internal investigation begins is for the investigating officers to contact the Internal Affairs Department [IAD]. IAD assigns the investigation a file number, and monitors the investigation to confirm that established procedures are being followed. The IAD, however, never established a file to monitor the investigation of Thomas' complaints against his partner. Even in the absence of direct evidence proving the wanton nature of the defendants' actions, there is sufficient evidence to support a reasonable jury finding of reckless disregard for Thomas' rights. Thus the jury was within its province in awarding punitive damages. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Mansell v. Saunders*, 372 F.2d 573, 576 (5th Cir. 1967).

■ The size of the punitive damage award is also within reasonable bounds. Exemplary damages inherently involve "an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." *Lee v. Southern Homes Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970). The record shows sufficient evidence to support the jury's findings, and we affirm the award made below.[2]

### III. Award of Attorneys Fees

The City of New Orleans contests the amount of attorneys fees awarded Thomas under 42 U.S.C. § 1988. The district court awarded total attorneys fees of $22,956.51, calculated at the rate of $90 per hour. The City urges that an award of no more than $50 per hour is justifiable, contending that the district court's award is not "in conformity with current jurisprudence." The district court set its reasonable attorneys

fees after receiving briefs from each side on this issue and uncontested affidavits presented by Thomas' attorney. The court followed the guidelines this Court set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

■ This judgment for attorney's fees may be reversed only if the district court abused its discretion in applying the *Johnson* criteria. *See Welch v. University of Texas and Its Marine Science Inst.*, 659 F.2d 531, 535 (5th Cir. 1981); *Johnson*, 488 F.2d at 717. We find no abuse of discretion in this case. The trial judge carefully examined the number of hours worked and refused to compensate for work that overlapped with civil service hearings unconnected with Thomas' suit in federal court. He examined the fee requested in the light of the *Johnson* criteria and the supporting affidavits presented to him. The court's conclusion that $90 per hour is reasonable for contingent fee civil rights cases of special complexity cannot be held an abuse of discretion. *See Neely v. City of Grenada*, 624 F.2d 547 (5th Cir. 1980) (upholding $100 per hour fee award in case brought under Title VII and 42 U.S.C. § 1983). The award of attorneys fees must be affirmed.

### IV. Issuance of Reinstatement Order

Finally, the City contests the propriety of the district court's order directing that Thomas be reinstated in his position as police officer. The objection is two-pronged. We have already disposed of the first contention. The City argues that the evidence does not support any judgment for Thomas so a reinstatement order was erroneous as well. But we have decided above that the record supports a holding in favor of Thomas.

Second, the City suggests that Thomas' separation from the force was due to reasons other than the constitutional violations the jury found. The City urges that even though the jury found the discharge was

---

2. We point out that neither the court's instructions to the jury nor the jury's award contemplated a judgment of punitive damages against the City of New Orleans itself. This is consistent with a prohibition against such an award set forth in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

wrongful, there was no showing of a logical nexus between the conspiracy and the wrongful discharge. It therefore claims that reinstatement cannot come within the scope of the instant proceeding. This argument must also fail.

The jury determined that Thomas was discharged because of his actions and as the result of the conspiracy to punish him for those actions. Yet his actions were constitutionally protected. The nexus between the conspiracy and the discharge is clear. When a monetary award alone will not repair a constitutional infraction in the civil rights setting, a judge may fashion such equitable relief as may be necessary to remedy the wrongs. In an employment-based dispute, reinstatement is an accepted measure to accompany back pay as part of the overall remedy. *See, e.g., United States v. City of Jackson, Mississippi,* 519 F.2d 1147 (5th Cir. 1975). Reinstatement is a routine remedy for wrongful discharge in industrial employment cases. National Labor Relations Act 29 U.S.C. § 160(c).

For the reasons outlined above, we AFFIRM the decisions of the district court. We REMAND for a determination of reasonable costs and attorneys fees related to this appeal.