19 F.3d 10
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Willie Edmond BAILEY, Plaintiff-Appellant,
v.
TOWN OF SMITHFIELD, Virginia; Claiborne V. Havens; Mark
Marshall; K. E. Beach, Defendants-Appellees.
 No. 93-1174.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1993.
Decided: March 4, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., Senior District Judge. (CA-92-778-2)
 ARGUED: Billie Jeanne Hobbs, Breit, Drescher & Breit, P.C., Norfolk, VA, for Appellant.
 Samuel Bernard Goodwyn, Willcox & Savage, P.C., Norfolk, VA, for Appellees.
 ON BRIEF: Jeffrey A. Breit, Breit, Drescher & Breit, P.C., Norfolk, VA, for Appellant.
 Conrad M. Shumadine and Mark D. Stiles, Willcox & Savage, P.C., Norfolk, VA, for Appellees.
 E.D.Va.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In connection with two robberies in Smithfield, Virginia, Willie Edmond Bailey was arrested and his residence was searched pursuant to warrants duly issued by a magistrate. Following conviction for one robbery and acquittal for the other, Bailey sued the Town of Smithfield and several members of its police department under 42 U.S.C. Sec. 1983, contending that the warrants for his arrest and for the search were based on a Smithfield police officer's affidavit that was false and misleading. The district court entered summary judgment for the defendants, finding that no evidence was presented showing that the affidavit was false or that matters omitted negated the evidence supporting probable cause. On appeal, Bailey alleges that the district court erred in overlooking disputed facts and in deciding against him on his Fourth and Fourteenth Amendment claims. We affirm.
 
 
 2
 * On July 21, 1991, the Sentry Mart in Smithfield, Virginia was robbed by a man described by a store employee, Angela Cox, as a black male of medium to dark complexion, between 5 7" and 5 8" tall, and weighing between 120 and 130 pounds. Corporal Kurt E. Beach of the Smithfield Police Department, who investigated the robbery, used Cox's description to generate a composite drawing of the perpetrator.
 
 
 3
 Nearly one month later, in the early morning hours of August 17, 1991, the Sentry Mart was robbed again. This crime was investigated by former Smithfield police officers Edward Hill and David Richardson, who interviewed the two store clerks on duty and one other witness who was outside the store when the robber departed. The two clerks, Rebecca Pinson and again Cox, described the individual as a black male in his mid-20's with dark eyes and thin build, approximately 61" to 62" in height. They also described him as wearing denim pants, no shirt, a printed scarf covering his nose and mouth, and carrying a folded newspaper over his left hand, which he motioned with during the robbery as if he were concealing a handgun. Cox added that the perpetrator of the July 21 robbery had been a different person than the one she saw on August 17. The third witness, Joey Perry, gave a description of the robber similar to that given by the clerks, except he thought the man was between 62" and 63" tall.
 
 
 4
 About one hour after the August 17 robbery, a Virginia state trooper brought a tracking dog to the Sentry Mart, which tracked a scent to a trailer park at the end of a lane approximately 1.5 miles away. There were several trailers located there, and the dog lost the scent in between two of them. Bailey emerged from a third trailer about 200 feet away from where the dog lost the scent as the police arrived in the area. He stated that he had been sleeping in the trailer and knew nothing about the robbery. Four other black males living in the trailers, including Bailey's brother, were also questioned about the robbery. All denied involvement.
 
 
 5
 Rebecca Pinson, the Sentry Mart clerk in charge of the cash register and therefore best able to describe the perpetrator of the August 17 robbery, was brought to the trailer park, where she viewed the five black males questioned by the police. They ranged from 5' 6" to 5' 11" in height. Although Pinson had described the robber as over six feet tall, she stated that she thought Willie Bailey, whose height is approximately 57", looked like the person who robbed the store. She stated that she had been afraid at the time of the robbery and that the suspect could have been shorter than the 61" she had initially described.
 
 
 6
 At the conclusion of the officers' shift, Corporal Beach took over the investigation of the August 17 robbery. Beach again interviewed the Sentry Mart clerks, Pinson and Cox, who both revised their earlier descriptions of the perpetrator and stated that they might have overestimated his height and weight. Beach then prepared a photographic lineup of six black males, including Bailey, which showed only the heads of the individuals. Pinson identified Bailey as the perpetrator of the August 17 robbery, and Cox independently identified him as the July 21 robber. Another witness outside the store on July 21 when the robber exited, Gary Gibson, also identified Bailey from the photographic lineup as the perpetrator of the July 21 robbery.
 
 
 7
 Based upon his investigation, Beach executed an affidavit to support an application for a warrant to search Bailey's trailer, and two warrants to arrest Bailey, one for each robbery. The affidavit omitted certain facts pertaining to the investigation of the August 17 robbery. It did not mention that all three witnesses to the robbery initially described the robber as over six feet tall; instead, the affidavit stated that the store was robbed by a black male "described as approximatley [sic] 25 years of age, 57", slend [sic] build...." The affidavit did not mention the fact stated in Officer Richardson's police report, that Pinson, when initially brought to the trailer park, did not positively identify Bailey as the August 17 robber, but stated that he "looked to be the same person who committed the robbery." In addition, the affidavit did not mention that Cox, the only witness to both robberies, specifically stated that the man who robbed the Sentry Mart on August 17 was not the same person who robbed it on July 21. Finally, the affidavit did not mention that the tracking dog lost the scent at a point closer to two other trailers than to Bailey's trailer. The affidavit simply stated that the tracking dog lost the scent at the end of Greenbriar Lane and that a trailer occupied by Willie Bailey was located at the end of the lane.
 
 
 8
 Based upon the information in the affidavit, the magistrate issued arrest warrants for Bailey for each robbery and a search warrant for his trailer for items of clothing worn during the robberies. Bailey was arrested and his trailer searched, but no evidence relating to either robbery was recovered. A grand jury then found probable cause to indict Bailey for both robberies. After a jury trial, Bailey was convicted of misdemeanor theft for the July 21 robbery and acquitted of armed robbery for the August 17 incident.
 
 
 9
 Bailey thereafter filed this civil rights suit, alleging that the warrant for the August 17 robbery was tainted by material omissions and misrepresentations and that probable cause had been lacking for his arrest for the August 17 robbery. As a result, Bailey argued, he had been falsely arrested for the later burglary and forced to stand trial, in violation of his Fourth, Eighth, and Fourteenth Amendment rights. On defendant's motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the district court received affidavits and other discovery materials, and treated the motion as one for summary judgment. The court then entered summary judgment for the defendants.
 
 II
 
 10
 We review the district court's summary judgment de novo, applying the same standard in examining the pleadings and evidence as did the court below. Drawing all reasonable inferences and viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate only when there is no issue of material fact left for resolution by trial and the moving party is entitled to judgment as a matter of law. The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 11
 Bailey contends that his Fourth, Eighth and Fourteenth Amendment rights were violated under color of state law when he was arrested and searched on the basis of warrants that issued upon the false and misleading affidavit of Corporal Beach. While he does not contest the fact that the affidavit as submitted to the magistrate provided probable cause for issuance of the warrants and that the warrants were in proper form, he contends that the affidavit itself was false and misleading and the product of deliberately corrupt police practices. Even though Bailey's claim is made under 42 U.S.C. Sec. 1983, the constitutional right on which he relies is that right given under Fourth Amendment jurisprudence to impeach the presumed validity of duly issued and factually proper warrants. Therefore, Bailey must meet the prerequisites for neutralizing the presumption of validity.
 
 
 12
 The Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978), defined the narrow, limited circumstances under which a defendant can successfully attack a facially sufficient warrant. The Franks test requires two showings. First, the defendant must, by a preponderance of the evidence, "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. at 155. Second, the defendant must establish that the false statement was necessary to the finding of probable cause, a conclusion that must be reached if the affidavit, purged of the false material, is insufficient to support probable cause. Id . at 156. The second showing may also be made by the defendant's proving that the affiant omitted facts material to the probable cause determination "with the intent to make, or in reckless disregard of whether [he] thereby made, the affidavit misleading." United States v. Reivich, 793 F.2d 957, 961 (8th Cir.1986); see also United States v. Ippolito, 774 F.2d 1482, 1486-7 n. 1 (9th Cir.1985); United States v. Williams, 737 F.2d 594 (7th Cir.1984), cert. denied, 470 U.S. 1003 (1985); United States v. Martin, 615 F.2d 318, 328 (5th Cir.1980). Mindful of the many important mechanisms in the pretrial stages of our criminal justice system designed to protect citizens' rights, such as the required finding of probable cause by a magistrate who may demand further evidence and take testimony, the finding by a grand jury that a true bill should issue, and all preliminary process afforded before trial, a defendant who seeks additional hearings and mechanisms to impeach these basic protective mechanisms bears a heavy burden. The Court in Franks explained:
 
 
 13
 There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.
 
 
 14
 Franks, 438 U.S. at 171.
 
 
 15
 In this case Bailey has attempted to meet the Franks requirement by alleging that specific facts were omitted from or misrepresented in the warrant affidavit, the inclusion or proper representation of which would have negated probable cause. He has supported his allegations with the affidavits of the two police officers who initially investigated the August 17 robbery. Bailey's evidence points specifically to four deficiencies in the warrant. Although we will consider each alleged deficiency to determine whether Bailey presented evidence sufficient to open the door to impeachment of the warrant, we must also keep in mind the fact that while each shortcoming in the warrant might not by itself suffice to negate probable cause, they cumulatively could have that effect.
 
 
 16
 First, Bailey claims that the affidavit fails to mention the height discrepancies between the witnesses' original statements and those given after requestioning by Corporal Beach, and the fact that Bailey is several inches shorter than the three witnesses originally recalled. Beach's affidavit states that "at approximately 3:55 A.M., on 8-17-91 a black male described as approximately [sic] 25 years of age, 57", slend [sic] build, wearing a black pair of denim pants, black tennis shoes and a dark blue scarf with white print over his face had entered the Sentry Mart # 5 and demanded that a store employee identified as Rebecca Jean Pinson opened [sic] the cash register." Bailey's complaint appears to be that the affidavit did not state that three witnesses initially described the suspect as over six feet tall. This complaint, however, fails to take into account the uncontradicted facts that two of the witnesses subsequently admitted that they may have mistakenly overestimated his height and that the store employee closest to the robber positively identified Bailey as the August 17 robber. Moreover, three witnesses testified to their revised estimates at trial. In view of the witnesses' final recollections on this point, we cannot find that these omissions of earlier recollections were shown to have been made with the intent to mislead the magistrate. For the reason that the affidavit contained the witnesses' latest and best estimates of the robber's height, one that they testified to at trial, we conclude that the omitted information was not material to the finding of probable cause. As this court pointed out in United States v. Colkley:
 
 
 17
 [T]o be material under Franks, an omission must do more than potentially affect the probable cause determination: it must be "necessary to the finding of probable cause." Franks, 438 U.S. at 156. For an omission to serve as the basis for a hearing under Franks, it must be such that its inclusion in the affidavit would defeat probable cause for arrest. See Reivich, 793 F.2d at 961. Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing.
 
 
 18
 899 F.2d 297, 301 (4th Cir.1990) (emphasis added); see also DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990)(court must ask whether omitted information would negate probable cause), cert. denied sub nom. Welsh v. DeLoach, 112 S.Ct. 65 (1991). Earlier and conflicting height descriptions by others who changed their estimates do not serve to negate the probable cause established by one witness's emphatic conclusion that the suspect was in fact the robber.
 
 
 19
 Bailey's second complaint about the affidavit is that it misleadingly suggests that the tracking dog trailed the suspect's scent from the crime scene directly to Bailey's trailer, when in fact the dog simply led the police to the vicinity of the trailer park, losing the trail closer to two other trailers, neither of which was Bailey's. The affidavit states that the dog tracked the scent
 
 
 20
 onto Greenbriar Lane from Battery Park Road to the end of Green Briar Lane; the track went no further. A trailer described as white in color with blue trim having an address of 12017 Green Briar Lane is located at the end of this road. This residence is occupied by a black male identified as Willie E. Bailey.
 
 
 21
 As Bailey asserts, the affidavit fails to mention that there were other trailers located at the end of Greenbriar Lane. Again, given the other evidence in the affidavit supporting probable cause, the fact that Corporal Beach omitted to mention the presence of other trailers near where the tracking dog lost the scent does not convince us that, had the information been included in the affidavit, it would have negated the existence of probable cause which was based on in-person identification.
 
 
 22
 Bailey's third quarrel with the affidavit lies in the fact that the affidavit fails to mention that Angela Cox, the only witness to both robberies, affirmatively stated that the July 21 robber and the August 17 robber were two different individuals. Officer Beach apparently chose to accord more weight to the positive identification by Pinson, the witness closest to the August 17 robber and the one who positively identified Bailey as the robber, than to Cox's negative statement that the two robbers were different men. Cox was approximately twenty feet from the cash register at the time of the second robbery, and she subsequently admitted to Corporal Beach that she could have been mistaken about the height of the robber on August 17. While it might have been more prudent to have allowed the magistrate to weigh these competing factors in determining probable cause, we cannot say that the inclusion of Cox's initial description of the second robber as a different individual from the first would have negated the probable cause established by another witness's positive identification of Bailey as the robber, especially given the fact that later Cox partially recanted her identification of the second robber by admitting that she was not sure about his height. While the differing identifications are certainly relevant to the weight to be accorded to the witnesses' testimony and could be crucial in establishing reasonable doubt at trial, they do not serve to rebut the positive evidence of probable cause recited in the warrant.
 
 
 23
 Finally, Bailey complains that the warrant affidavit represented incorrectly that Pinson positively identified Bailey as the August 17 robber. This contention, however, fails to consider all of Pinson's statements and is easily answered. When brought to the trailer park and shown several young black males residing there, Pinson did not positively identify Bailey but did identify him as looking similar in features and build but not height. However, Pinson did positively identify Bailey when she picked him out of a photographic lineup of six individuals. This is noted in the affidavit, which states: "On 8-21-91[the] photo spread was presented to Rebecca Pinson. Pinson identified Bailey as being the same black male that robbed Sentry Mart # 5 on 8-17-91." The omission from the affidavit of the fact that Pinson's earlier identification of Bailey was qualified, in contrast to her second, unqualified identification of him as the robber, is immaterial and certainly not necessary to a probable cause determination. The single positive identification of Bailey as the robber suffices to establish probable cause, and the earlier, tentative identification of him only serves to enhance, rather than negate, that probable cause.
 
 
 24
 Even considering the cumulative effect of the omitted facts--height discrepancy, the exact location where the tracking dog lost the scent, Cox's statement that the two robbers were different, and Pinson's initial tentative identification of Bailey--we cannot conclude that their inclusion would negate probable cause for the arrest for the August 17 robbery. Probable cause for the warrants was readily established by Pinson's positive identification of Bailey and by the dog's tracking the robber's scent to Bailey's trailer park. In short, we conclude that Bailey failed to meet the heavy burden required to circumvent the process normally designed to assure the proper issuance of warrants. Such efforts must be scrutinized closely because, as we explained in Colkley:
 
 
 25
 [T]he affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.
 
 
 26
 899 F.2d at 301.
 
 
 27
 Moreover, to require, as the plaintiff appears to suggest, that the police include in each warrant affidavit all potentially exculpatory evidence would be to import the due process requirements of Brady v. Maryland, 373 U.S. 83 (1963), into the Fourth Amendment context. The Brady duty of the prosecutor to turn over to the defense all potentially exculpatory evidence implicates the constitutional right to a fair and reliable outcome at trial. The review by the magistrate, with the right to review the evidence and question the complaining witness, is but a preliminary step to the trial and is only one of many such protections. Bailey would have us ignore the important distinctions among the various stages of the process, which are articulated in Colkley:
 
 
 28
 It is at trial that the accused is cloaked with the presumption of innocence and may put the state to its proof beyond a reasonable doubt. By contrast, the probable cause determination in Franks, which derives from the Fourth Amendment, involves no definitive adjudication of innocence or guilt. Because the consequences of arrest or search are less severe and irremediable than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial may be less compelling in the context of an application for a warrant.
 
 
 29
 899 F.2d at 302.
 
 
 30
 In conclusion, we note that the adequacy of evidence that established probable cause was examined at least four times during the course of Bailey's prosecution: before the warrants were issued, at the preliminary hearing, by the grand jury, and at the criminal trial. At no time did Bailey take the opportunity during the course of his criminal proceedings to request a Franks evidentiary hearing to challenge the probable cause determination before his trial. He did not do so, despite the fact that his attorney clearly had access to or had knowledge of the allegedly exculpatory evidence omitted from the warrant affidavit, for he successfully used it in impeaching the government's witnesses at trial and in obtaining an acquittal for his client for the August 17 robbery. As we suggested in Colkley, were this question of probable cause close, we might be entitled to conclude that a claim of insufficient probable cause should be considered waived: "Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity." 899 F.2d at 303.
 
 
 31
 Because we believe that Bailey's arrest and prosecution for the August 17 robbery were supported by probable cause, his claims that his constitutional rights were violated must fail. Bailey was duly arrested for two crimes, indicted, tried, and convicted of the July 21 robbery and acquitted of the August 17 robbery. He received all the process that was due him.
 
 III
 
 32
 Bailey also contends that the district court improperly dismissed his Sec. 1983 claim that the Town of Smithfield's police officials conspired to violate his constitutional rights. To establish this claim, Bailey must show that at least two of the defendants conspired to violate his civil rights, see Thomas v. New Orleans, 687 F.2d 80, 83 (5th Cir.1982), and he cannot rest his case on unsupported conclusions or inferences of conspiracy, see Richardson v. Indianapolis, 658 F.2d 494 (7th Cir.1981), cert. denied, 455 U.S. 945 (1982).
 
 
 33
 In support of the conspiracy claim, Bailey filed the affidavits of the two police officers, Richardson and Hill, who initially investigated the August 17 robbery. These affidavits charge that the defendants conspired and effected a plan to destroy the original police reports of the incident and to substitute Corporal Beach's report of his own investigation of the crime. For example, the affidavits state that "Marshall, Havens and Beach, in a malicious effort to bring about the conviction of Willie Bailey at all costs, destroyed the evidence which would have exonerated Bailey." These allegations, however, are contradicted by the record, which lacks any evidence of any agreement and includes a copy of the original handwritten police report prepared by Richardson and Hill. Furthermore, the defendants clearly did not "destroy the evidence which would have exonerated Bailey," as demonstrated by the fact that his attorney used that evidence in obtaining an acquittal for him on the August 17 robbery charge. Thus, we find no error in the district court's conclusion that Bailey failed to advance a triable claim that the defendants conspired to violate his civil rights under color of state law.