# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1618

_____

Charmaine Hunter; Charmaine Hunter, *
as parent and next best friend of *
Charles Franks, *
 *
     Appellees, *
 * Appeal from the United States
  v. * District Court for the
 * Southern District of Iowa.
Lonnie Namanny, Individually *
and as a Police Officer, *
 *
     Appellant, *
 *
City of Des Moines, Iowa; *
Unnamed Officers, *
 *
     Defendants.

_____

Submitted:  December 17, 1999

Filed:  August 1, 2000

_____

Before BEAM, HEANEY and HANSEN, Circuit Judges.

_____

HEANEY, Circuit Judge.

   Lonnie Namanny appeals the district court's denial of his motion for summary judgment on qualified immunity grounds.  We affirm in part and reverse in part.

# I. Background

On June 20, 1996, an anonymous caller contacted the Department of Housing Services for the City of Des Moines, Iowa, complaining of drug activity at the residence of Charmaine Hunter. The caller reported "lots of traffic coming and staying for short periods at a time. This goes on every day of the week at all times of the day. Traffic really picks up at 6:00 p.m. to 10:00 p.m." On the basis of the complaint, Namanny and another police officer were assigned to conduct surveillance of Hunter's residence. On July 1, the officers conducted surveillance of Hunter's home from 8:00 p.m. to midnight, and observed only two vehicles registered to Hunter parked outside.

Namanny and another officer conducted additional surveillance on July 2 between 9:00 p.m. and 4:00 a.m. At approximately 11:00 p.m., a vehicle pulled into Hunter's driveway, and the driver entered Hunter's residence. After "a couple minutes," the driver left Hunter's home. As the vehicle passed, Namanny observed that the driver was not wearing a seatbelt. Namanny requested a check on the vehicle's license plates, and learned that the vehicle was registered to Carla F. Davis, and that Davis' driver's license was expired. Namanny requested assistance, and he and other officers stopped the car. Davis was driving the car; a search of the vehicle turned up crack cocaine. Davis was not charged with any criminal offense despite the discovery of crack.

Namanny then prepared an affidavit in support of a warrant for a search of Hunter's home. In relevant part, the affidavit stated:

> [A] formal complaint concerning narcotic activity was received through Des Moines Police Vice/Narcotics Control Section on 20 JUNE 96 . . . . The complaint described heavy, short-term traffic to and from the residence. This traffic is consistent with traffic to and from a house involved in the sale of illegal drugs based on my experience and training.

Surveillance was then conducted . . . between the hours of 2100 hours to approximately 2300 hours, at which time a small silver vehicle was observed . . . . Shortly after observing the vehicle at the address, officers then observed the vehicle pull away from the address . . . .

A traffic stop was conducted . . . on the small silver vehicle. Driver of vehicle was Carla Faye Davis . . . . Davis was asked to step out of her vehicle after officers observed her digging down by the driver's door upon approaching her vehicle. During search incident to arrest on Davis, a small bag of crack cocaine was found in her purse . . . .

Davis was asked if she wanted to cooperate with our investigation by providing information regarding where the crack in her purse was obtained. Davis stated she had just purchased the crack . . . from a Charmine [sic] Hunter for $50.00. Davis stated she has bought crack from Hunter approximately three to four times at the same address . . . . Davis' description of the house from where she bought the crack cocaine matches [Hunter's] house.

Based on my training and experience, the information provided is consistent with drug dealing and individuals who deal on this level are known to keep other tools of their trade at their place of residence. Some of the tools include additional drugs, scales, money, drug notes and weapons.

(App. at 47-48.)

Namanny's affidavit was presented to a judge, and a warrant was issued. At approximately 2:00 a.m. on July 3, the warrant was executed. Namanny and other officers knocked and announced their presence; they received no response and used a battering ram to enter. Upon entering, the officers drew their weapons and identified themselves as Des Moines narcotics officers. Hunter had been asleep on the couch in her underclothes, and asked to be allowed to put on some more clothing. The officers initially refused, but then permitted Hunter to dress herself. Hunter also asked to be

-3-

allowed to use the toilet, explaining that she was disabled and taking medication that caused her to urinate frequently. The officers refused Hunter's repeated requests until she urinated and defecated on herself. At the time the officers entered Hunter's house, Hunter's fifteen-year-old son Charles Franks was in bed in his second-floor bedroom. Franks was handcuffed at gunpoint and led downstairs while his room was searched. No evidence of criminal conduct was found at Hunter's home, and the officers left the residence at approximately 3:30 a.m.

Hunter filed suit against Namanny in Iowa state court, claiming that Namanny's actions violated her and Franks' Fourth Amendment and Due Process rights, and constituted an excessive use of force and various torts under Iowa law. After Namanny removed the action to the district court in July 1997, Davis was deposed. At her deposition, Davis contradicted portions of the warrant affidavit. Specifically, Davis denied telling the officers who questioned her that she had purchased cocaine from Hunter. Instead, Davis testified that she told the officers that between the time she left Hunter's house and when she was pulled over, she had stopped at a local convenience store where an individual whom she could identify only as Charles gave her the cocaine.

Namanny moved for summary judgment on qualified immunity grounds, contending that even if the warrant affidavit were reconstructed to exclude allegedly false information and include critical information allegedly omitted with the intention to mislead, it would still support probable cause. Namanny also argued that Davis' statements should not be included in a reconstructed affidavit. He maintained that the inclusion of omitted information supplied by one who, like Davis, also provides the basis for the plaintiff's claim that the affidavit included false information would give undue weight to that person's account. Namanny argued that a plaintiff could easily defeat probable cause and avoid summary judgment merely by convincing a witness to recant. Namanny further argued that he was entitled to summary judgment on any constitutional claim arising out of his denial of Hunter's request to use the toilet, as no

clearly-established constitutional law required him to grant such a request. Namanny contended that Hunter's excessive-force claim failed because his actions in executing the search warrant were reasonable as a matter of law. Finally, Namanny argued that he was entitled to summary judgment on Hunter's state-law claims.

After hearing argument, the district court delivered an oral ruling denying Namanny's summary judgment motion. Addressing Hunter's Fourth Amendment claim, the court rejected Namanny's argument concerning the addition of alleged omissions and reconstructed the affidavit consistent with our decisions in United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986) and United States v. Dennis, 625 F.2d 782, 791 (8th Cir. 1980), by removing from the affidavit allegedly false statements and including omissions allegedly made with the intent to mislead. The affidavit so reconstructed omitted Namanny's account of his encounter with Davis and substituted Davis' account. The reconstructed affidavit also recounted that surveillance of Hunter's home on July 1 from 8:00 p.m. to midnight detected no traffic to or from the home except two vehicles registered to Hunter, and that Davis was not charged with any criminal offense as a result of the discovery of crack in her possession.

The court determined that although the anonymous complaint regarding drug activity at Hunter's residence might have provoked a reasonable suspicion, no reasonable officer or magistrate would have issued a warrant based on the facts recited in the reconstructed affidavit. Although the question of qualified immunity for Hunter's remaining constitutional claims was raised in the parties' arguments, the court did not specifically address those arguments in its ruling denying Namanny's motion. Namanny appeals, renewing his argument that Davis' account of events should not form the basis for both an omission from and an addition to the reconstructed affidavit. Namanny also contends the district court erred in denying him qualified immunity with respect to Hunter's remaining constitutional claims.

## II. Discussion

The district court's denial of Namanny's motion for summary judgment on qualified immunity is an immediately appealable final order because it turns on a legal determination whether certain facts show a violation of clearly established law. See Behrens v. Pelletier, 516 U.S. 299, 306 (1996); Pendleton v. St. Louis County, 178 F.3d 1007, 1010 (8th Cir. 1999). Our review is de novo. See Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998).

Qualified immunity shields Namanny from personal liability if his actions, though unlawful, were "nevertheless objectively reasonable in light of the clearly established law at the time of the events in question." Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998) (citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)). We analyze Namanny's claim of qualified immunity using a three-part inquiry: (1) whether Hunter has asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, viewing the facts in the light most favorable to Hunter, there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. See Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996).

In analyzing whether Hunter has asserted a constitutional violation, we examine both the evidence presented and the allegations of Hunter's complaint.[1] See Walden

---

[1]The scope of this inquiry underscores the limits of our jurisdiction in interlocutory appeals from the denial of summary judgment on qualified immunity grounds. In an appeal of this nature, we lack jurisdiction to consider whether Hunter's evidence would support a finding that the alleged conduct occurred. See Behrens v. Pelletier, 516 U.S. 299, 313 (1996). Hence, we are not "free to conclude that no reasonable jury could return a verdict for Hunter," as the dissent contends. Post at ___. Moreover, the dissent's dismissal of Davis's testimony as "palpably incredible," post at ___, appears to be the very sort of appellate fact-finding that it decries.

-6-

v. Carmack, 156 F.3d 861, 869 (8th Cir. 1998). We believe the facts alleged by Hunter, if true, describe a violation of her Fourth Amendment rights. See Franks v. Delaware, 438 U.S. 154, 171 (1978) (warrant based upon affidavit containing "deliberate falsehood" or reflecting "reckless disregard for the truth" violates Fourth Amendment). However, Namanny is nevertheless entitled to qualified immunity if the warrant affidavit, as reconstructed according to Franks, would still provide probable cause to arrest or search. See Bagby v. Brondhaver, 98 F.3d 1096, 1099 (8th Cir. 1996).

We believe a properly reconstructed affidavit would not have provided probable cause to search Hunter's home. In this regard, we believe the affidavit was properly reconstructed by the district court. As appellant concedes, under Franks, the reconstructed affidavit must omit Namanny's account of his encounter with Davis. See Franks, 438 U.S. at 171. Further, a reconstructed affidavit must also include material allegedly omitted with reckless disregard for the truth. See United States v. Gladney, 48 F.3d 309, 313-14 (8th Cir. 1995); United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993); United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990); United States v. Lueth, 807 F.2d 719, 726 (8th Cir.1986); Reivich, 793 F.2d at 960-61; Dennis, 625 F.2d at 791. Where, as here, the allegedly omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred. See Reivich, 793 F.2d at 961. Thus, the district court properly included in the reconstructed affidavit Davis' version of her encounter with Namanny, as well as the fact that Namanny's four-hour stakeout on July 1 was fruitless.

We decline Namanny's suggestion to modify Reivich such that Davis' version of events would not be considered. To do so would skirt Franks' insistence that a probable cause determination be made on information that is truthful:

> When the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be

a <u>truthful</u> showing. This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

<u>Franks</u>, 438 U.S. at 164-65 (internal quotation omitted). Where a plaintiff has made a sufficient showing that the warrant affidavit omitted information critical to the probable cause determination, truthfulness requires that that information be included in the reconstructed affidavit. This principle applies <u>a</u> <u>fortiori</u> where, as here, the allegedly omitted information runs nearly perpendicular to the information supplied in the warrant affidavit. We note that public officials like Namanny are protected from spurious § 1983 lawsuits based on warrant affidavits by <u>Franks</u>' requirement of a "substantial preliminary showing"; challenges to warrant affidavits may not be conclusory, and must be accompanied by adequate evidentiary support. <u>See</u> <u>Franks</u>, 438 U.S. at 170-71; <u>United States v. McNeil</u>, 184 F.3d 770, 775-76 (8th Cir. 1999); <u>United States v. Wajda</u>, 810 F.2d 754, 759 (8th Cir. 1987) (noting substantiality requirement "is not lightly met").

We do agree, however, with Namanny's contention that the district court should not have included in the reconstructed affidavit the fact that Davis had not been charged with any criminal offense. In so doing, the district court confused the mandate of <u>Franks</u> with the disclosure requirements of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Simply put, that Davis was not charged with a crime is not critical to a probable cause determination, and therefore supports no inference of recklessness with the truth. <u>Cf.</u> <u>Reivich</u>, 793 F.2d at 962-63 (holding that promises of leniency to witnesses did not rise to level of omissions made with reckless disregard for truth).

That said, we have no difficulty concluding that a warrant affidavit properly reconstructed from facts viewed in the light most favorable to Hunter would have been insufficient to establish probable cause. Probable cause for a warrant exists only when the totality of the circumstances provides sufficient facts to lead a prudent person to believe there is a fair probability that contraband or other evidence of a crime will be found. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Here, two nights of surveillance failed to corroborate the only factual claim made by the anonymous tipster: heavy, short-term traffic every day of the week and at all hours. Cf. United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (holding no probable cause to issue warrant where anonymous tip was corroborated only with respect to innocuous details). And although Namanny's suspicions might certainly have been aroused by the odd explanation Davis said she gave as to how she obtained the crack found in her possession, such bare suspicion falls short of giving corroboration to the anonymous tip to support the issuance of a warrant.

Because it is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause, see Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998), we next consider the objective reasonableness of Namanny's actions, i.e., whether there are genuine issues of material fact as to whether a reasonable official would have known that Namanny's actions violated that requirement, see Yowell, 89 F.3d at 544. Namanny points to the discovery of cocaine in Davis' possession to support his contention that the existence of probable cause was at least arguable. Namanny also notes that even if Davis' account were true he would not have been required to believe that she was given the crack in a convenience store. We acknowledge that probable cause determinations are not a matter of "library analysis by scholars." Gates, 462 U.S. at 232 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). However, given the genuine factual disputes that remain, a jury must decide whether Namanny's actions were objectively reasonable. Viewing the facts in the light most favorable to Hunter, the nexus between

-9-

Hunter's house and the cocaine discovered in Davis' possession was tenuous at best, and Namanny was not entitled to summary judgment.

Namanny asks that we consider whether he was entitled to qualified immunity with respect to Hunter's remaining constitutional claims, despite the district court's failure to explicitly do so. "Where the record on appeal is sufficiently clear, remand is not required for the resolution of issues not addressed by the district court." Holloway v. Conger, 896 F.2d 1131, 1137 (8th Cir. 1990); see also Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998). We believe the record here is sufficiently clear to permit us to resolve those issues.

In his summary judgment motion, Namanny argued he was entitled to qualified immunity with respect to Hunter's other constitutional claims, including any claimed violation of rights resulting from his denial of Hunter's request to use the toilet. We agree. We find no authority for the existence of a right on the part of one who is lawfully detained pursuant to the execution of a search warrant, see Michigan v. Summers, 452 U.S. 692, 704-05 (1981), to use a toilet upon demand. Although Hunter's dignity was certainly compromised by what transpired as the search was conducted, we are unable to conclude that the Constitution requires that police engaged in a search for drugs allow a resident of the subject property access to a ready means of disposal of such contraband. Cf. Heitschmidt v. City of Houston, 161 F.3d 834, 838-39 (5th Cir. 1998) (holding detainee stated claim for unlawful detention where detainee was handcuffed in street and held without access to toilet for four hours during evidentiary search, and detainee was not suspect in underlying criminal investigation).

Finally, we believe the facts alleged by Hunter do not rise to the level of an excessive use of force. It remains an open question in this circuit whether an excessive force claim requires some minimum level of injury. See Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999); Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995). Regardless of whether Hunter's claims of emotional and mental injuries are sufficient

-10-

to support an excessive-force claim, such injuries appear unrelated to the quantum of force used in the execution of the warrant, but rather to the fact that the warrant was issued and executed at all. Hunter's only allegation of force is that Franks was handcuffed and led downstairs. This de minimis use of force is insufficient to support a finding of a constitutional violation. See Curd v. City Court, 141 F.3d 839, 841 (8th Cir. 1998), cert. denied, 119 S. Ct. 204 (1998).

### III. Conclusion

For the forgoing reasons, we affirm the district court's denial of summary judgment on Hunter's claims concerning the warrant affidavit, and remand for entry of judgment in favor of Namanny on Hunter's remaining constitutional claims.

HANSEN, Circuit Judge, concurring.

I concur in the court's opinion and judgment but write specially to emphasize the context within which this case must be contained. This is not the usual criminal case denial-of-a-suppression-motion setting in which Franks is generally applied. In that usual setting, the district court would hold a hearing and make fact-findings indicating which version of the facts is found to be the most credible. That is not this case, and I note that contrary to the dissent's assertion, the court's opinion today does not hold that Ms. Davis's testimony is credible and true. Rather, the court engages in the necessary fiction that her deposition testimony is true because we are in the summary judgment context where the facts must be taken in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

This case addresses the denial of an officer's motion for summary judgment asserting qualified immunity. In this context, we determine whether the allegations and evidence presented, taken in the light most favorable to the nonmoving party, create a

genuine issue of material fact concerning whether the officer would have known that his conduct violated a clearly established federal right. See Walden v. Carmack, 156 F.3d at 868-69. Viewing the facts asserted in the light most favorable to Ms. Hunter requires us to engage in the fiction that Ms. Davis's deposition testimony is credible for this limited exercise. I do not quarrel with the dissent's statement that the plaintiff's own naked allegations are not sufficiently probative to permit a finding in the plaintiff's favor. See Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994). The deposition testimony here, however, is not a naked allegation of the plaintiff but a statement by a witness that she told the officer she did not obtain the drugs from Ms. Hunter. If taken as true (which is the light most favorable to the plaintiff), this statement is probative of whether the officer knowingly made a false statement or material omission in the warrant affidavit.

If Officer Namanny is challenging the veracity of Ms. Davis's statements in this appeal, then the issue becomes no more than a dispute concerning the sufficiency of the evidence over which we have no interlocutory jurisdiction. See Behrens v. Pelletier, 516 U.S. at 313; Johnson v. Jones, 515 U.S. 304, 313 (1995).

BEAM, Circuit Judge, dissenting.

I respectfully suggest that the court applies both inapposite precedent and an inapplicable standard of proof. This, in turn, leads to a faulty legal conclusion. Accordingly, I dissent.

This 42 U.S.C. § 1983 case is before the court after a district court order denying Namanny's motion for summary judgment. As the court notes, we analyze Namanny's claim of qualified immunity using a three-part inquiry: (1) whether Hunter has asserted a violation of a constitutional right; (2) if so, whether the right was clearly established at the time of the constitutional violation; and (3) whether, viewing the record most favorably to Hunter, there is no genuine issue of material fact as to whether a

-12-

reasonable police officer would have known that the acts in question violated Hunter's constitutional rights. See Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996). Ours is a de novo review in which we apply the same standards as those that should have been applied by the district court. See Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).

Under the first inquiry, the court concludes that if the modified affidavit was insufficient to establish probable cause to search, a constitutional violation sufficient to support Hunter's section 1983 claim has been established. This is clearly incorrect.

In reaching this conclusion, the court cites only precedent involving the suppression of evidence in criminal prosecutions—not section 1983 qualified immunity cases. See ante at 7 (citing Franks v. Delaware, 438 U.S. 154 (1978); United States v. Reivich, 793 F.2d 957 (8th Cir. 1986) and United States v. Dennis, 625 F.2d 782 (8th Cir. 1980) (citations omitted)). This is error.[2]

These suppression cases are of value in determining a police officer's duties. However, the search of a residence through use of a warrant issued without probable cause does not mean that the resident has established a constitutional violation sufficient to support a section 1983 claim against the police officer who attempted to

---

[2]The court attempts to support its arguments with wholly inapposite language from Reivich to the effect that when "*allegedly* omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred." Ante at 7 (emphasis added). This random statement from Reivich has virtually nothing to do with this case and serves only to obfuscate the real issues. First, contrary to the situation here, in Reivich, there were factual findings of deliberate omissions made by the district court not merely untested allegations by Hunter and her drug customer. Second, the issue here is not "probable cause" and a simple violation of the Fourth Amendment sufficient to grant suppression of evidence, but rather deliberate falsehood and reckless conduct by the police officers.

supply the probable cause necessary to obtain the warrant. Following Franks, the plaintiff, in an official immunity case, must prove (1) that an affiant, in applying for a warrant, knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a substantial falsehood, and (2) that such statements or omissions were material and necessary to the finding of probable cause. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citing Franks, 438 U.S. at 171-72). See also Myers v. Morris, 810 F.2d 1437, 1457-58 (8th Cir. 1987), abrogated on other grounds, Burns v. Reed, 500 U.S. 478 (1991). A showing of inadvertence, negligence, or even gross negligence in presenting or failing to present facts to the issuing judge does not carry the day for a section 1983 plaintiff.

When such a claim is asserted and the defendant moves for summary judgment alleging qualified immunity, the plaintiff has the burden of establishing the existence of a genuine issue of material fact as to whether or not knowing, willful, and reckless conduct has occurred. See Moody v. St. Charles County, 23 F.3d 1410, 1411 (8th Cir. 1994). This cannot be done through naked allegations and fanciful claims. See id. at 1412.[3] Hunter "must substantiate [her] allegations with 'sufficient probative evidence that would permit a finding in [her] favor [by a reasonable jury] on more than mere speculation, conjecture or fantasy.'" Id. (quoting Gregory v. Rogers, 974 F.2d 1006,

---

[3]The court citing Walden v. Carmack, 156 F.3d 861, 869 (8th Cir. 1998), see ante at 6-7, and Behrens v. Pelletier, 516 U.S. 299, 313 (1996), see ante n.1, contends that because this case is here on summary judgment, we are obligated to "examine both the evidence presented [presumably the Davis deposition] and the allegations of Hunter's complaint," and assume they are true. This is an incorrect statement of the law. The court chides me for finding the Davis testimony "palpably incredible." In this regard, the court again makes an inaccurate analysis of the law. This case is not before the court on a Federal Rule of Civil Procedure 12(b)(6) motion but rather a Rule 56 motion and one that has to be considered under the presumption of validity established by Franks and the substantial showing requirement set forth in Moody, Carmack and Hervey v. Estes, 65 F.3d 784 (9th Cir. 1995). And, the holding in Behrens, is clearly not to the contrary.

1010 (8th Cir. 1992)).   The burden of persuasion is succinctly stated in Hervey v. Estes, 65 F.3d 784 (9th Cir. 1995).  "[A] plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a *substantial showing* of a deliberate falsehood or reckless disregard [for the actual facts] and establish that, without the dishonesty included or omitted information, the magistrate would not have issued the warrant."  Id. at 789 (emphasis added).  The exact measure of proof that it takes to substantiate such acts does not seem to have been established in this circuit.  It is clear, however, that it is a comparatively high threshold.  This is because a "presumption" of validity accompanies the affidavit supporting a search warrant, and "[t]o overcome this presumption requires no less than a specific affirmative showing of dishonesty by the applicant."  Myers, 810 F.2d at 1458 (citing Franks, 438 U.S. at 171).  While our court, as far as I can tell, has never specifically discussed how much proof is needed to make this showing, it is clear to me that whatever the test, it exceeds the standard announced by the court in this case, see ante n.1, and the quantum of evidence adduced by the plaintiff.[4]

The concurrence agrees that Hunter's "own naked allegations are not sufficiently probative," ante at 12, but states that in a case like this we "engage[] in the necessary fiction" that Ms. Davis's deposition testimony is credible and true.  Ante at 11.  I find no support for such an approach.  Before allowing the case to proceed to trial, the court has a duty to determine whether Hunter has made a "substantial showing" of falsehood and recklessness.  This cannot be done without an analysis of the character and quality of the facts advanced, even facts proffered by a nonparty.  Under this "necessary

---

[4]This affirmative showing requirement is not an unusual evidentiary test in summary judgment jurisprudence.  Other presumptions at work in other circumstances require a heightened standard of proof.  See Cleveland v. Policy Management Sys. Corp., 119 S. Ct. 1597, 1604 (1999) (earlier assertion of total disability for purposes of Social Security Act creates a presumption that can only be overcome with a good, sufficient, and believable explanation of why claimant is now a qualified individual with a disability under the Americans with Disabilities Act).

fiction" approach, any third-party deposition or affidavit, even one that is patently incredible, as the deposition in this case, is sufficient to defeat a claim of qualified immunity.

While the court must view any inferences drawn from the *facts established* in a light most favorable to Hunter, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the court is free to conclude that no facts exist sufficient for a reasonable jury to return a verdict for Hunter.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is Hunter's responsibility to address the elements of the qualified immunity defense under the burdens required by the applicable presumptions of validity and to show a genuine issue of material fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Assuming these requirements, I turn to Namanny's warrant affidavit and the facts advanced by Hunter.  Hunter and the court criticize Namanny's failure to assert that although the complaint received by the police described "heavy, short-term traffic," no such traffic was observed on either July 2, the night of the search, or on the previous night when surveillance was conducted for four hours.  Insofar as Hunter's specific constitutional claim is concerned, this information, which is not disputed by Namanny for purposes of summary judgment, is irrelevant, immaterial and not causally related to the purported constitutional violation—the residential search.  Namanny's affidavit, as presented to the judge, with or without the omitted traffic information, was clearly sufficient to establish probable cause to search Hunter's residence.  What otherwise occurred on July 2 is the crucial question.

Hunter does not claim, or in any way attempt to show, that any part of Namanny's affidavit of July 2 was affirmatively false, except whether Davis got the drugs from Hunter or from the illusive "Charles" whom Davis says she met by chance at a convenience store during a deviation in travel while she was being surveilled, followed, and stopped for an uncontested traffic violation.  Indeed, there is no dispute

that Davis was at Hunter's house, that she was surveilled and followed, that she was detained for a traffic violation and that she had the drugs in her purse. The only dispute, as indicated, is that Hunter claims that Davis stopped at a convenience store and that when she was stopped for the traffic violation she told Namanny that she got the drugs from a friend. The police, of course, swear that Davis did not stop at a convenience store and that Davis told Namanny she got the drugs from Hunter.

In the face of this dispute, the court dons its fact-finder hat and credits Hunter's version of events, disbelieves Officer Namanny, and, in doing so, peremptorily overrides the presumption of truthfulness that accompanies the affidavit. Citing Franks, the court, see ante at 7-8, demands a truthful showing and then simply proceeds to pronounce that Hunter and Davis are truthful and that Officer Namanny is not. This is a misplaced application of the "favorable view of the proof" rule. In the framework of summary judgment, the court must be guided by the substantive evidentiary standards that apply to the particular case in determining whether the proffered facts should be given a favorable view. See Anderson, 477 U.S. at 255. Namanny, after all, is not seeking judgment on the pleadings.

Applying a *sufficient* probative evidence standard, see Myers, 810 F.2d at 1458, Hunter falls well short of establishing enough facts to allow a reasonable jury to find for her on her claim. Without passing this test, she has neither established a violation of a constitutional right nor the existence of a genuine issue of material fact.

I recognize this case is complicated by the "she says, he says" factual dispute on the source of the crack cocaine. However, given Hunter's burden of making a specific affirmative showing that the disputed facts advanced by Namanny were knowingly, deliberately or recklessly false, I believe that Hunter's "she says" presentation falls short.

Indeed, a review of the record, quickly reveals that Hunter's version of Davis's activities is palpably incredible, thus not supportive of her claim under any burden of proof one may wish to select. Davis's story involves a chance encounter with Charles, last name unknown, who said to Davis "Well, why don't you go ahead and take this. I know you still like to do this," when he gratuitously gave her the crack found by the police in her purse. All this supposedly occurred while she was being trailed by the police. As to what she told the officers after the traffic stop, her deposition contained the following excerpt:

Q.    Did they [the police] at any time ask you where you had purchased cocaine?

A.    I don't remember. I told them–[t]hey did, but I told them I didn't purchase it.

Q.    What did you tell them?

A.    I told them it was given to me. They asked if I had paid anything for it. I said, "I didn't know it was in my purse. It wasn't mine." I denied it.

      . . . .

Q.    What specifically did you tell them [the police] when you were stopped as to where you got the cocaine? Specifically what did you tell them?

A.    From a friend. I said it wasn't mine after he pulled it out. I denied it.

It seems almost inconceivable that we would send this police officer to trial for a purported constitutional violation on this measure of evidence.

-18-

Finally, the court uses this case to needlessly gloss and construe (and I think misconstrue) our holdings in <u>Reivich</u> and <u>Dennis</u>. Little, if any, of the court's case analysis is necessary or proper for a decision in this case. There are no issues here of suppression of evidence in a criminal proceeding as were dealt with in <u>Reivich</u> and <u>Dennis</u>. There is also no basis for a holding that this court in an appeal of this kind can credit or discredit evidence and make random conclusions as to where the truth lies in an evidentiary dispute. The court's entire discussion of what should be excised from or inserted into an affidavit in support of a search warrant is, at best, *obiter dictum*.

I would reverse the district court with directions to grant Namanny qualified immunity or, at least, remand for a hearing and evaluation of the single, disputed evidentiary issue under an appropriate burden of proof imposed upon the plaintiff.

I dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.